UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ASHLEY LYNN ANDRADE,

       Plaintiff,

v.                                    Case No: 2:19-cv-887-JES-MRM

CARMINE MARCENO, in his
official capacity as Sheriff
of Lee County, JOSEPH M.
CLARK, in his official and
individual capacity, and
EARTHEN BROWN in his
official and individual
capacity,

       Defendants.

_____

**OPINION AND ORDER**

     Plaintiff Ashely Lynn Andrade (Plaintiff or Andrade) filed an eleven-count Second Amended Complaint against defendants Carmine Marceno, in his official capacity as Sheriff of Lee County (Sheriff Marceno), and Lee County Sheriff's Office (LCSO) deputies Joseph Clark (Deputy Clark) and Earthen Brown (Deputy Brown) in their official and individual capacities (collectively Defendants). (Doc. #61, ¶¶ 8-10.) This matter comes before the Court on defendants' Motion for Summary Judgment (Doc. #78). Plaintiff filed a Response in Opposition (Doc. #82), which was later amended (Docs. ##83-1, 88), and Defendants filed a Reply (Doc. #85). For the reasons set forth below, the motion is granted.

**I.**

Summary judgment is proper where the evidence "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Eleventh Circuit recently summarized:

> If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted. To defeat summary judgment, a mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.
>
> At the summary judgment stage, we view the evidence, draw all reasonable factual inferences, and resolve all reasonable doubts in favor of the non-movant. But we do so only to the extent supportable by the record. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. Thus, in cases where a video in evidence obviously contradicts the nonmovant's version of the facts, we accept the video's depiction instead of the nonmovant's account and view the facts in the light depicted by the videotape.

Baxter v. Roberts, 54 F.4th 1241, 1253 (11th Cir. 2022). See also Robinson v. Sauls, 46 F.4th 1332, 1340 (11th Cir. 2022). If the videos "do not answer all questions or resolve all the details of the encounter, we view the evidence in the light most favorable

to" plaintiff.   <u>Johnson v. City of Miami Beach</u>, 18 F.4th 1267, 1269 (11th Cir. 2021).

II.

This case involves the arrest of Plaintiff after a family get-together in Southwest Florida turned out to be anything but a typical day at the beach.  For summary judgment purposes, the material relevant facts (subsequently referred to as the "summary judgment facts") are as follows:[1]

On July 8, 2018, Plaintiff was at the Lani Kai Island Resort (the Lani Kai) in Fort Myers Beach, Florida, to celebrate her father's birthday. Plaintiff was on the beach with family members, including her cousin Danielle Breehne (Breehne) and her cousin's boyfriend, Jake Oade (Oade).  Plaintiff's family members were playing on the beach when Oade ran into the Gulf of Mexico, disappearing from plaintiff's sight for several minutes. Plaintiff next saw Oade on the ground as several LCSO deputies were placing him under arrest. Plaintiff, unaware of what had happened, approached and was informed by a LCSO deputy that Oade had touched a girl.

---

[1] The facts are either undisputed, or as depicted in the objective record evidence (i.e., the video recordings), or as viewed in the light most favorable to Plaintiff as the nonmoving party.  The Court credits objective record evidence over plaintiff's account when the two are squarely contradictory. <u>Shaw v. City of Selma</u> 884 F.3d 1093, 1098 (11th Cir. 2018); <u>Baxter</u>, 54 F.4th at 1253.

Plaintiff followed deputies as they brought Oade to a patrol vehicle parked in the front breezeway of the Lani Kai.[2] Plaintiff watched while Oade was placed into a patrol vehicle, and then stood nearby. A large group of people gathered in the breezeway to witness the arrest. One of the LCSO deputies instructed the crowd to back away from the patrol vehicle and Oade. Deputy Brown approached Plaintiff[3] and told her to move away from the vehicle. Plaintiff complied by moving to the far end of the Lani Kai's breezeway.

Within seconds, however, Plaintiff and Breehne[4] re-approached the vicinity of the patrol vehicle in which Oade had been placed. Breehne moved within a few feet of the patrol vehicle.  Plaintiff walked up behind Breehne, began pointing her finger at one of the LCSO deputies, cursed at the deputy, and stated "there was going to be a lawsuit."

Deputy James VanPelt approached Plaintiff and Breehne, waving his arms and repeatedly instructing them to "back up." Plaintiff,

---

[2] There are three videos of the relevant events, one from a cell phone, one from the Lani Kai breezeway, and one from the Lani Kai lobby.  (Doc. #78, Ex. A, B, C.)

[3] For identification purposes when viewing the videos, Deputy Brown is the officer wearing sunglasses with a shaved head and Plaintiff is wearing a pink (two-piece) bathing suit. (Doc. #78-2.)

[4] For identification purposes when viewing the videos, Breehne is wearing a black (two-piece) bathing suit.  (Doc. #78-2.)

who had her arms wrapped around Breehne's waist, began backing up, as did Breehne. Breehne continued talking while Deputy VanPelt moved towards her. At the same time, Deputy Clark[5] came up behind Plaintiff (on her left side) and instructed Plaintiff to "back up." Deputy Brown also approached and yelled "back up." Deputy Brown briskly approached plaintiff and simultaneously pushed Breehne on her left shoulder. Breehne initially stepped backwards, then recoiled and squared-off with Deputy Brown. A scuffle ensued, and Deputy Brown pulled Breehne in his direction. Plaintiff, who still had her arms around Breehne's waist, was attempting to hold onto Breehne. Deputy Clark intervened at this point, and during the scuffle Plaintiff grabbed Deputy Clark's shirt. (Doc. #84-2, p. 59.) Deputy Clark then grabbed Plaintiff's left arm and pulled Plaintiff towards him while she continued to hold onto Breehne with her right arm.

Plaintiff's ex-husband placed his arm around Plaintiff's waist and began pulling Plaintiff in the opposite direction from Deputy Clark, in a human tug-of-war. Deputy Clark lost his grip on Plaintiff and fell to the ground, as did Plaintiff and her ex-husband. Deputy Clark immediately moved to secure Plaintiff, who was partially laying on her ex-husband, by grabbing Plaintiff's

---

[5] For identification purposes when viewing the videos, Deputy Clark is the officer wearing black sunglasses and has a tattoo on the inside of each forearm. (Doc. #78-2.)

arm, flipping her onto her stomach, and pinning her to the ground with his bodyweight, pressing his knee into her butt and his hand behind her neck. Deputy Clark yelled at someone in the crowd to "get back," and within seconds Deputy Clark placed Plaintiff's hands behind her back, stood her up, handcuffed her. Deputy Clark walked Plaintiff to the parking lot without further incident.

Plaintiff was transported to a local hospital via ambulance. Upon discharge, she was taken to Lee County jail, where she stayed for approximately twelve hours until her mother posted bond. Plaintiff was charged with resisting a police officer without violence pursuant to Fla. Stat. § 843.02. Counsel filed a Notice of Appearance and Waiver of Arraignment. The State Attorney's Office declined to file an Information.

### III.

Plaintiff's Second Amended Complaint (SAC) (Doc. #61) is the operative pleading. The SAC asserts eleven claims against various Defendants: (1) false arrest under Florida law against Deputy Clark in his individual capacity and Sheriff Marceno in his official capacity (Count I); (2) false arrest against Deputy Clark in his individual capacity pursuant to 42 U.S.C. § 1983 (Count II); (3) false imprisonment under Florida law against Deputy Clark in his individual capacity and Sheriff Marceno in his official capacity (Count III); (4) false imprisonment against Deputy Clark in his individual capacity pursuant to § 1983 (Count IV); (5) excessive

force against Deputies Clark and Brown in their individual capacities pursuant to § 1983 (Count V); (6) malicious prosecution under Florida law against Deputies Clark and Brown in their individual capacities (Count VI); (7) malicious prosecution against Deputies Clark and Brown in their individual capacities pursuant to § 1983 (Count VII); (8) First Amendment retaliation against Deputy Clark in his individual capacity pursuant to § 1983 (Count VIII); (9) battery under Florida law against Deputy Clark in his individual capacity (Count IX); (10) intentional infliction of emotional distress under Florida law against Deputies Clark and Brown in their individual capacities (Count X); and (11) negligent training and supervision against Sheriff Marceno in his official capacity pursuant to § 1983 (Count XI). All defendants move for summary judgment on all counts, arguing there are no genuine issues of material fact and they are entitled to judgment in their favor as a matter of law. (Doc. #78.)

**IV.**

**A. Federal Claims Pursuant to 42 U.S.C. § 1983**

Counts II, IV, V, VII, VIII, and XI of the SAC assert various claims pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of action against any person who, under color of state law, deprives a person of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "To state a claim for relief in an action

brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276-77 (11th Cir. 2003)(citation omitted.) "A constitutional claim brought pursuant to § 1983 must begin with the identification of a specific constitutional right that has allegedly been infringed." DeMartini v. Town of Gulf Stream, 942 F.3d 1277, 1288 (11th Cir. 2019) (quoting Paez v. Mulvey, 915 F.3d 1276, 1285 (11th Cir. 2019)).  Here, Plaintiff identifies the Fourth Amendment and the First Amendment as the constitutional rights at issue in the case.

**B. Qualified Immunity Principles**

Since defendants assert entitlement to qualified immunity as alternative relief for the individual capacity claims, the Court addresses those governing principles.  Officers who act within their discretionary authority are "entitled to qualified immunity under [section] 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." Dist. of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018)(internal punctuation and citations omitted).  As the Eleventh Circuit has recently summarized:

> Qualified immunity shields public officials
> from liability for civil damages when their
> conduct does not violate a constitutional

> right that was clearly established at the time
> of the challenged action. To receive qualified
> immunity, the defendant must first show he was
> performing a discretionary function. The
> plaintiff then bears the burden of proving
> both that the defendant violated his
> constitutional right and that the right was
> clearly established at the time of the
> violation.

Washington v. Howard, 25 F.4th 891, 897-98 (11th Cir. 2022)(internal punctuation and citations omitted.)

Plaintiff asserts that Deputies Clark and Brown acted within the course and scope of their employment, and under color of law, as certified law enforcement officers. (Doc. #61, ¶¶ 9-10, 15, 23-24.) It is clear from the undisputed facts that both deputies were acting within their discretionary authority during their interaction with Plaintiff at the Lani Kai. Therefore, Plaintiff will bear the burden of showing that: (1) the summary judgment facts show the officers' conduct violated a federal right, and (2) the federal right in question was clearly established at the time of the violation. Tolan v. Cotton, 572 U.S. 650, 655-57 (2014).

> A right is clearly established only if its
> contours are sufficiently clear that a
> reasonable official would understand that what
> he is doing violates that right. In other
> words, existing precedent must have placed the
> statutory or constitutional question beyond
> debate. This doctrine gives government
> officials breathing room to make reasonable
> but mistaken judgments, and protects all but
> the plainly incompetent or those who knowingly
> violate the law.

Carroll v. Carman, 574 U.S. 13, 16 (2014) (per curiam) (internal citations and punctuation omitted). A plaintiff can prove that a particular constitutional right is clearly established in one of three ways: (1) showing that a materially similar case has already been decided by an appropriate court; (2) showing that a broader, clearly established principle should control the novel facts of a particular case; or (3) establishing that the conduct so obviously violates the Constitution that prior case law is unnecessary. Davis v. Waller, 44 F.4th 1305, 1312-13 (11th Cir. 2022).

"[E]ach defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018). Entitlement to qualified immunity is for the court to decide as a matter of law. Baxter, 54 F. 4th at 1256.

The Court will first address Plaintiff's federal claims, followed by her state law claims.

### V.

### A. Count II and Count IV — Fourth Amendment False Arrest and False Imprisonment Against Deputy Clark In His Individual Capacity Pursuant to 42 U.S.C. § 1983

Count II and Count IV of the SAC assert federal claims pursuant to 42 U.S.C. § 1983 against Deputy Clark for false arrest (Count II) and false imprisonment (Count IV). (Doc. #61, ¶¶ 30-38, 49-54.) Both claims assert that Deputy Clark violated Plaintiff's Fourth Amendment rights by "intentionally, wrongfully

and illegal grabbing, seizing, handcuffing, arresting, detaining, and imprisoning" her. (Id., ¶¶ 31, 50.) Both claims further assert that Deputy Clark deliberately restrained Plaintiff without legal authority by "grabbing her arm, throwing her to the ground, handcuffing her, violently lifting her up while wrenching her shoulders, and confining her to a jail cell" (Id., ¶¶ 32, 51) without a warrant, Plaintiff's consent, or probable cause. (Id., ¶¶ 33, 52.)

Deputy Clark responds that these federal false arrest and false imprisonment claims both fail because there was probable cause to arrest Plaintiff. (Doc. #78, p. 8.) Alternatively, Deputy Clark argues that he is entitled to qualified immunity because he had arguable probable cause to arrest and the federal right at issue was not clearly established. (Id. at p. 11-14.) Deputy Clark also argues that the false imprisonment claim fails for the additional reason that Plaintiff's length of incarceration did not satisfy the due process component of the claim. (Id. at 11.)

### (1) General Legal Principles

False arrest and false imprisonment are overlapping torts which both concern detention without legal process. Wallace v. Kato, 549 U.S. 384, 388-89 (2007); Williams v. Aguirre, 965 F.3d 1147, 1157 (11th Cir. 2020). Both the arrest and the detention of a person (even beyond the start of legal process) constitute a "seizure" under the Fourth Amendment. Ashcroft v. al-Kidd, 563

U.S. 731, 735 (2011) (arrest); Manuel v. City of Joliet, 580 U.S. 357 (2017) (detention beyond start of legal process).  Under the Fourth Amendment, the reasonableness of such a seizure is determined by the presence or absence of probable cause.  Baxter, 54 F.4th at 1265 (citing Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007)).  "[T]he correct legal standard to evaluate whether an officer had probable cause to seize a suspect is to 'ask whether a reasonable officer could conclude ... that there was a substantial chance of criminal activity.'"  Washington, 25 F.4th at 902 (quoting Dist. of Columbia v. Wesby, 138 S. Ct. 577, 586, 588 (2018)).[6]  See also Ingram v. Kubik, 30 F.4th 1241, 1250 (11th Cir. 2022); Richmond v. Badia, 47 F.4th 1172, 1180 (11th Cir. 2022).

"To succeed on a false arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest."  Richmond, 47 F.4th at 1180.  "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." Baxter, 54 F.4th at 1265 (citation omitted.)  On the other hand, the existence of probable cause constitutes an absolute bar to a section 1983 action for false arrest, even if a minor offense is involved.  Baxter, 54 F.4th at 1265.

---

[6] Plaintiff relies on a legal standard for probable cause (Doc. #83-1, p. 8) which has since been clarified by the Eleventh Circuit.  See Washington, 25 F.4th at 902.

"A false imprisonment claim under § 1983 requires meeting the common law elements of false imprisonment and establishing that the imprisonment was a due process violation under the Fourteenth Amendment." Helm v. Rainbow City, Ala., 989 F.3d 1265, 1278 (11th Cir. 2021) (citing Campbell v. Johnson, 586 F.3d 835, 840 (11th Cir. 2009)).  "The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness of confinement." Campbell, 586 F.3d at 840. "[I]n order to establish a due process violation, a plaintiff must show that the officer acted with deliberate indifference, i.e., demonstrating that the officer 'had subjective knowledge of a risk of serious harm and disregarded that risk by actions beyond mere negligence.'" Helm, 989 F.3d at 1278 (citations omitted.) "Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest." Ortega v. Christian, 85 F.3d 1521, 1526 (11th Cir. 1996).  A claim of false imprisonment under § 1983, however, is defeated if the officer has probable cause to arrest.  Case v. Eslinger, 555 F.3d 1317, 1330 (11th Cir. 2009).

### (2)   Existence of Probable Cause

The parties do not dispute that Plaintiff was placed under arrest and detained at the Lani Kai, and then eventually taken to jail. (Doc. #78, p. 9; Doc. 83-1, p. 10.)  Both sides agree that

the "seizure" for Fourth Amendment purposes began when Deputy Clark grabbed Plaintiff's arm.  (Id.)  The parties disagree as to whether there was probable cause or arguable probable cause for the seizure and detention.

As stated earlier, in § 1983 false arrest/false imprisonment claims Plaintiff bears the burden of establishing the lack of probable cause for the seizure or detention.  Richmond, 47 F.4th at 1180.  Probable cause to arrest exists when a "reasonable officer could conclude . . . that there was a substantial chance of criminal activity." Washington, 25 F.4th at 902. This "is not a high bar," Paez, 915 F.3d at 1286 (citation omitted), and "requires only a probability . . . of criminal activity, not an actual showing of such activity." Case, 555 F.3d at 1327 (citation omitted).

Plaintiff asserts that Deputy Clark lacked probable cause to seize and arrest her because she was actively following the orders of Officer VanPelt — by backing away from the patrol vehicle — when Deputy Clark grabbed her arm and arrested her.  (Doc. #83-1, pp. 7-13.)  Plaintiff further argues that at no point did she "disobey the order" or "return[] seconds later and st[and] within feet of the patrol car." (Id., p. 10.)  Thus, Plaintiff argues, she has established the lack of probable cause to arrest for violation of Fla. Stat. § 843.02.  As will be discussed, Plaintiff's factual assertions are belied by the videos.

14

Deputy Clark asserts that before he placed his hands on Plaintiff, she had violated Fla. Stat. § 843.02 by returning to the police vehicle and standing within a few feet of it after being told to back away and momentarily doing so. (Doc. #78, pp. 9-10.) Deputy Clark contends that by coming back to the patrol vehicle, Plaintiff had disobeyed a lawful order in his presence before he seized her. (Doc. #85, p. 3.)

As a general matter, the deputies clearly had the authority to control the area surrounding the arrest and the police vehicle in which the arrestee had been placed. Police officers may lawfully demand that citizens, even innocent bystanders, move away from an area of a crime, the scene of an investigation, or the scene of an arrest. E.g., Corbitt v. Vickers, 929 F.3d 1304, 1314 (11th Cir. 2019). More specifically, Florida law provides that an individual commits the offense of resisting an officer without violence when she "resist[s], obstruct[s], or oppose[s] any [law enforcement] officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer." Fla. Stat. § 843.02. "[T]o support a conviction for obstruction without violence [under § 843.02], the State must prove: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." C.E.L. v. State, 24 So. 3d 1181, 1185-86 (Fla.

2009). It is also a crime under this statute to attempt to oppose or obstruct an officer. <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1558-59 (11th Cir. 1993), <u>modified</u> 14 F.3d 583 (11th Cir. 1994); <u>Storch v. City of Coral Springs</u>, 354 F.3d 1307, 1315 (11th Cir. 2003).

In the summary judgment context, the Court's "focus is whether a reasonable jury could find that evidence of either element was lacking at the scene of the incident." <u>Baxter</u>, 54 F.4th at 1266. If so, Deputy Clark did not have probable cause to arrest Plaintiff. <u>Id.</u> The Court discusses the two elements in turn.

### (a) Engaged In Lawful Execution Of A Legal Duty

The Florida statute makes clear that a person commits this offense only if her resistance or obstruction is in response to the officer's "lawful execution of a legal duty." Fla. Stat. § 843.02. This requires more than an officer who is "merely on the job." <u>Storch</u>, 354 F.3d at 1315. The Court looks to the legal standard that governs the officer's action and determines whether the officer complied with that legal duty at the time of the resisting/obstructing conduct. <u>C.E.L.</u>, 24 So. 3d at 1186.

> To meet this threshold, the conduct of the officer must be consistent with the Fourth Amendment and any other relevant requirements of law. This inquiry focuses on the specific point in time when the resistance occurred so that the essential inquiry is whether the officer was lawfully executing a legal duty when the obstructing conduct occurred.

> Ultimately, if an arrest is not lawful, then
> a defendant cannot be guilty of resisting it.

Baxter, 54 F.4th at 1267.

Deputy Clark was engaged in the lawful execution of a legal duty at the time of Plaintiff's obstructive conduct. The deputies responded to a dispatch call about a man (Oade) who was in the water by the Lani Kai physically touching a woman. (Doc. #82-3, p. 32.) Upon arresting Oade, the deputies placed him in a LCSO patrol vehicle parked in the front breezeway of the Lani Kai. The deputies were attempting to further their investigation, and instructed the crowd of people, including Plaintiff, to back away from the patrol vehicle where Oade was being held. (Doc. #78-2; Doc. #78-13, p. 2.) Plaintiff clearly understood this order, since she initially complied and backed away from the area. Orders by law enforcement officers to back away from a vehicle or location under the circumstances of this case are lawful. See, e.g., J.M. v. State, 960 So.2d 813, 815 (Fla. 3d DCA 2007) (lawful for officers to request that people leave a park for public safety reasons); Gollop v. Torres, No. 1:15-cv-20914-UU, 2016 U.S. Dist. LEXIS 98924, at *13 (S.D. Fla. Mar. 28, 2016)(under Fla. Stat. § 843.02 officers were executing a legal duty when they ordered plaintiff not to enter a marked-off area). Thus, Deputy Clark has established the first element of Section 843.02.

**(b)  Obstruction Or Resistance Of That Lawful Duty**

The second element is satisfied when "the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of [the officer's] legal duty." C.E.L., 24 So. 3d at 1185–86.  Contrary to Plaintiff's assertions, the video evidence demonstrates that while Plaintiff initially backed away from the patrol vehicle, she returned with Breehne and stood within feet of the patrol vehicle, cursed at the LCSO deputies, and stated there was going to be a lawsuit. (Docs. ##78-2, 78-3.) Thus, the video shows conduct by Plaintiff which resisted or obstructed Deputy Clark's efforts while he was executing his legal duties.

Under the summary judgment facts, a reasonable jury could not find there was a lack of evidence as to either prong of the § 843.02 offense.  A reasonable officer could have reasonably concluded there was a substantial chance of criminal activity in violation of Fla. Stat. § 843.02, thereby satisfying the appropriate legal standard.  Washington, 25 F.4th at 902.  The Court finds Deputy Clark had probable cause to arrest, detain, and imprison Plaintiff under Fla. Stat. § 843.02.  See Sullivan v. City of Pembroke Pines, 161 F. App'x 906, 909-10 (11th Cir. 2006) (officer had probable cause to arrest plaintiff for violation of § 843.02 where plaintiff obstructed officer's effort to conduct investigation and interrupted him after plaintiff had been

instructed to return to her vehicle); <u>Francis v. State</u>, 736 So. 2d 97, 98-99 (Fla. 4th DCA 1999) (affirming the resisting without violence conviction of woman who blocked an officer's path and told him, "It's okay; we don't need you," when the officer was investigating a 911 call); <u>Wilkerson v. State</u>, 556 So.2d 453 (Fla. 1st DCA 1990) (affirming conviction under § 843.02 where the defendant refused to leave an area while officer was effectuating arrest and had ordered the defendant at least twice to leave); <u>Gollop</u>, 2016 U.S. Dist. LEXIS 98924, at *13-15 (officer had probable cause to arrest plaintiff for violating § 843.02 by walking in close proximity to a marked off area).

Plaintiff's false imprisonment claim also fails if Deputy Clark had probable cause to arrest Plaintiff. <u>Case</u>, 555 F.3d at 1330; <u>Quire v. Miramar Police Dep't</u>, 595 F. App'x 883, 886 (11th Cir. 2014). As stated above, the Court finds that Deputy Clark had such probable cause to arrest and detain Plaintiff for violation of Fla. Stat. § 843.02.

In sum, the summary judgment facts establish Plaintiff has not shown a lack of probable cause for her arrest for violation of Fla. Stat. § 843.02. Therefore, Plaintiff fails to establish both a federal false arrest claim and a federal false imprisonment claim.

### (3)   Qualified Immunity

Alternatively, Deputy Clark argues he is entitled to qualified immunity because there was at least arguable probable cause to arrest Plaintiff and, even without arguable probable cause, there is no showing that Deputy Clark violated a clearly established law in the context of the situation he faced.   (Doc. #78, pp. 12-13.)   The Court agrees.

"Arguable probable cause" exists when "reasonable officers in the same circumstances and possessing the same knowledge as the arresting officer could have thought there was probable cause to arrest" the plaintiff.   <u>Sosa v. Martin Cnty.</u>, 13 F.4th 1254, 1264 (11th Cir. 2021).   Whether an officer possessed arguable probable cause "depends on the elements of the alleged crime and the operative fact pattern." <u>Brown</u>, 608 F.3d at 735 (citation omitted). Having found actual probable cause, the Court also finds that the summary judgment facts establish at least arguable probable cause to arrest and further detain Plaintiff.   Therefore, even if the arrest was not lawful because of the absence of actual probable cause, Deputy Clark is entitled to qualified immunity since a reasonable officer in his place could have believed Plaintiff's conduct was interfering or attempting to interfere with the officers' arrest of Oade.

Additionally, Deputy Clark is entitled to qualified immunity because Plaintiff has not established that the federal right was

clearly established in the context of this situation so as to give fair notice that his actions were unconstitutional.  Charles v. Johnson, 18 F.4th 686, 698 (11th Cir. 2021). Plaintiff has failed to satisfy any of the three ways of establishing a right was "clearly established."  Baxter, 54, F.4th at 1267-68.  Therefore, the summary judgment facts show that Plaintiff has not proven the constitutional right was clearly established at the time of the incident.

### (4)  Additional False Imprisonment Element

Deputy Clark argues that the summary judgment facts fail to establish a false imprisonment claim because the length of her incarceration was too short to establish a due process violation under the Fourteenth Amendment.  (Doc. #78, p. 11.)  But Deputy Clark's only authority is the unpublished decision in Hendricks v. Sheriff, Collier Cnty., 492 F. App'x 90, 91-92, 96 (11th Cir. 2012), which held in part that "the relatively short detention [of more than a day] did not amount to a denial of substantive due process."  The Court finds that this non-binding authority is too slender of a legal reed to support Deputy Clark's argument.

Accordingly, summary judgment is granted in favor of Deputy Clark as to the federal false arrest claim in Count II and the federal false imprisonment claim in Count IV.  The summary judgment facts establish there was probable cause to arrest and detain Plaintiff for violation of Fla. Stat. § 843.02, which defeats both

the federal false arrest and the federal false imprisonment claims. Alternatively, Deputy Clark is entitled to qualified immunity as to these two counts because he had arguable probable cause to arrest and detain Plaintiff, and Plaintiff has not shown the constitutional right was clearly established in the context of the situation confronting Deputy Clark.

### B. Count V — Fourth Amendment Excessive Force Claim Against Deputies Clark and Brown In Their Individual Capacities Pursuant to 42 U.S.C. § 1983

Count V of the SAC alleges an excessive force claim under § 1983 against Deputies Clark and Brown in their individual capacities. (Doc. #61, p. 10.)  Plaintiff alleges that Deputies Clark and Brown violated her Fourth Amendment rights and used excessive and unreasonable force when

> Defendant Brown charged at and shoved Ms. Andrade and her friend, who was standing in front of her, causing Ms. Andrade to lose her balance. As Ms. Andrade was falling backwards, Defendant Clark then violently grabbed Ms. Andrade by the arm, flung her around and slammed her body and head onto the concrete garage floor. Deputy Clark forcibly held Ms. Andrade's head down on the concrete garage floor with his hand, and held the rest of her body down on the concrete garage floor with his knee across the back of her thighs. He then cuffed her and dragged her to her feet, violently wrenching her shoulders in the process.

(Doc. #61, ¶ 60.)

Deputies Clark and Brown respond that Count V fails because any force used was fully consistent with that allowed by the Fourth Amendment.  Even if the force was unlawful, both deputies assert

they are entitled to qualified immunity.  (Doc. #78, pp. 14-21.)
Deputies Clark and Brown also assert that because they are
responsible for their own conduct, which varies greatly, the Court
is obligated to analyze the cases against them separately. (Id. at
14.)

(1)   **General Legal Principles**

The Fourth Amendment's prohibition against unreasonable
seizures encompasses the right to be free from the use of excessive
force in the course of an arrest. Graham v. Connor, 490 U.S. 386,
395 (1989); Robinson, 46 F.4th at 1341 (citation omitted.) "Unlike
a false arrest claim, a genuine excessive force claim is not
resolved by the existence of probable cause. Even when an officer
has probable cause for an arrest, the manner in which a search or
seizure is conducted must nonetheless comply with the Fourth
Amendment." Richmond, 47 F.4th at 1180 (punctuation and citation
omitted.)  As the Supreme Court has summarized:

> In assessing a claim of excessive force,
> courts ask whether the officers' actions are
> objectively reasonable in light of the facts
> and circumstances confronting them. A court
> (judge or jury) cannot apply this standard
> mechanically. Rather, the inquiry "requires
> careful attention to the facts and
> circumstances of each particular case. Those
> circumstances include the relationship
> between the need for the use of force and the
> amount of force used; the extent of the
> plaintiff 's injury; any effort made by the
> officer to temper or to limit the amount of
> force; the severity of the security problem at
> issue; the threat reasonably perceived by the

officer; and whether the plaintiff was actively resisting.

Lombardo v. City of St. Louis, Mo., 210 L. Ed. 2d 609 (2021)(internal punctuation and citations omitted.)   See also Rivas-Villegas v. Cortesluna, 142 S. Ct. 4, 8 (2021).

"Reasonableness is the touchstone for all excessive force claims, . . . ." Robinson, 46 F.4th at 1341. The Court views the circumstances from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and allows for the fact that officers are often required to make "split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." Plumhoff v. Rickard, 572 U.S. 765, 775 (2014) (quoting Graham, 490 U.S. at 396-97). See also Robinson, 46 F.4th at 1341; Charles, 18 F.4th at 699-700. "When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." Cnty. of L.A., Calif. v. Mendez, 581 U.S. 420, ___, 137 S.Ct. 1539, 1547 (2017).

The right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat of physical coercion to effect the arrest. Graham, 490 U.S. at 396. "[S]ome use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the

alleged offense." <u>Durruthy v. Pastor</u>, 351 F.3d 1080, 1094 (11th Cir. 2003). <u>See</u> <u>also</u> <u>Baxter</u>, 54 F.4th at 1268; <u>Wade v. Daniels</u>, 36 F.4th 1318, 1323 (11th Cir. 2022); <u>Charles</u>, 18 F.4th at 699-700. Because of this, "the application of <u>de minimis</u> force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." <u>Nolin v. Isbell</u>, 207 F.3d 1253, 1257 (11th Cir. 2000).

### (2) **Reasonableness of Force Used**

Whether analyzed individually or collectively, the summary judgment facts establish neither deputy used excessive force. The Court has set forth in detail the elements of the offense and the evidence established by the videos.[7] <u>See</u> <u>supra</u>, pp. 3-6. The video evidence contradicts Plaintiff's exaggerated description of Deputy Clark's actions. Deputy Clark did grab Plaintiff's arm when the scuffle ensued between Deputy Brown and Breehne. But Deputy Clark did not slam Plaintiff to the ground. Rather, when Deputy Clark lost his grip on Plaintiff's arm in the tug-of-war, Plaintiff fell to the ground because her ex-husband had his arms around her waist and was still pulling her in the opposite direction. Plaintiff fell on top of her ex-husband, and Deputy Clark fell to the ground. Grabbing a person's arm to place them

---

[7] In her deposition, Plaintiff acknowledged that the events transpired as shown in the videos. (Doc. #78-6, pp. 57, 62-63.)

under arrest is "a relatively common and ordinarily accepted non-excessive way to detain an arrestee." Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002).

The video evidence also shows that de minimis force was used when Deputy Clark got up from the ground and secured Plaintiff. (Doc. #78-2; Doc. #78-11, p. 38.)  Deputy Clark placed Plaintiff's hands behind her back, stood her up, and then handcuffed her. (Doc. #78-2; Doc. #78-7.)  Eleventh Circuit caselaw has found much more significant force to be de minimis. See Croom v. Balkwill, 645 F.3d 1240, 1245 (11th Cir. 2011) (pushing the plaintiff to the ground and holding her on the ground for up to ten minutes by placing foot on plaintiff's back was de minimis); Rodriguez, 280 F.3d at 1351 (no excessive force where officer "grabbed plaintiff's arm, twisted it around plaintiff's back, jerk[ed] it up high to the shoulder and then handcuffed plaintiff as plaintiff fell to his knees screaming that [the officer] was hurting him"); Nolin, 207 F.3d at 1257 (force de minimis where plaintiff grabbed from behind by the shoulder and wrist, thrown against a van, kneed in the back, and had his head pushed into the side of the van); Post, 7 F.3d at 1559 (de minimis force applied where officer subdued the suspect with a choke hold and pushed him against the wall).  A reasonable officer in Deputy Clark's position, who was required to make a split-second judgment in a tense, uncertain, and rapidly

evolving situation, could reasonably have found it necessary to secure Plaintiff in the manner shown on the video recordings.[8]

Plaintiff also alleges that Deputy Brown used excessive force when he "charged at and shoved" Breehne, who was standing in front of her, which caused Plaintiff to lose her balance. (Doc. #61, ¶ 60.) Deputy Brown argues that the excessive force claim fails because the use of force was *de minimis* as a matter of law, he never touched Plaintiff, and Plaintiff was not injured as a result of his actions. (Doc. #78, pp. 19-20.)

Plaintiff's excessive force claim against Deputy Brown fails. The force used by Deputy Brown, whether considered individually or collectively with that used by Deputy Clark, was *de minimis* force under the circumstances. "Critically, '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" Graham, 490 U.S. at 397. The video evidence shows that Deputy Brown pushed Breehne

---

[8] Plaintiff maintains that she had to undergo several surgeries on her jaw and shoulder, but points to no corroborating evidence of the same. (Doc. #83-1, p. 17.) Though "resulting injuries can be evidence of the kind or degree of force that was used by the officer", Charles, 18 F.4th at 700, "[a]t the summary judgment stage, bare assertions [that Plaintiff suffered injuries that necessitate surgery] simply cannot suffice." Thomas v. AMTRAK, 745 F. App'x 875, 877 (11th Cir. 2018)(quoting Celotex Corp., 477 U.S. at 322-24). Even if Plaintiff's alleged injuries are factored in, the summary judgment facts show there was no excessive force by either officer.

back away from the patrol vehicle, which in turn caused Plaintiff to lose her balance.  Plaintiff does not assert or cite any record evidence that she suffered any injury resulting from this push. See McCall v. Crosthwait, 336 F. App'x 871, 872-73 (11th Cir. 2009) ("We have repeatedly held that a push or shove that causes pain and necessitates no or merely minor medical treatment is not a violation of the Fourth Amendment, even where the arrestee was handcuffed and no further force was necessary.").  A reasonable officer in Deputy Brown's position could reasonably have found it necessary to push Breehne in the manner shown on the video recordings under the circumstances depicted in the summary judgment facts.

### (3)   Qualified Immunity

Alternatively, both deputies argue that they are entitled to qualified immunity.  Both assert that even if they used excessive force, Plaintiff has failed to show that the right was clearly established in the context of this case at the time of her arrest. (Doc. #78, pp. 18, 20-21.)

The Supreme Court has found law enforcement officers who used excessive force to be entitled to qualified immunity if the clearly established right had not been defined with specificity.  "This Court has repeatedly told courts ... not to define clearly established law at a high level of generality.  That is particularly important in excessive force cases, . . . ."  City of

28

Escondido, Cal. v. Emmons, 202 L. Ed. 2d 455 (2019)(citation
omitted).  See also City of Tahlequah, Okla. v. Bond, 211 L. Ed.
2d 170 (2021); Rivas-Villegas v. Cortesluna, 211 L. Ed. 2d 164
(2021)("Thus, to show a violation of clearly established law,
Cortesluna must identify a case that put Rivas-Villegas on notice
that his specific conduct was unlawful."); Kisela v. Hughes, 200
L. Ed. 2d 449 (2018).

Here, Plaintiff had been ordered by a police officer to back
away from the police vehicle in which an arrestee had been placed.
Plaintiff initially complied, then returned to the vehicle and
engaged a deputy in conversation challenging the arrest.  The
deputies had probable cause to arrest Plaintiff for violation of
Florida law.  The resulting conduct is depicted in the videos.
Plaintiff has not satisfied her burden of establishing that under
the circumstances of this case her right to be free of excessive
force was clearly established as of July 2018.

In sum, the motion for summary judgment as to Count V is
granted.  The Court finds that the summary judgment facts establish
that neither officer, either individually or in combination, used
excessive force in the efforts to arrest Plaintiff.  Alternatively,
if excessive force was used, both deputies are entitled to
qualified immunity because Plaintiff has not shown that her right
was clearly established at the time.

**C. Count VII — Fourth Amendment Malicious Prosecution Against Deputies Clark and Brown In Their Individual Capacities Pursuant to 42 U.S.C. § 1983**

Count VII of the SAC alleges that Deputy Clark intentionally, knowingly, maliciously, recklessly, and negligently arrested Plaintiff and initiated criminal proceedings against her by incarcerating her and charging her with a criminal offense. (Doc. #61, ¶ 75.) Count VII further alleges that Deputies Clark and Brown were the legal causes of the original judicial proceeding since each deputy forwarded information to prosecutors and caused false police reports to be filed that wrongly accused Plaintiff of violating Fla. Stat. § 843.02. (Id., ¶ 77.)

Defendants argue that summary judgment in their favor is appropriate because they had probable cause to seize and arrest Plaintiff, which defeats the § 1983 malicious prosecution claim. (Doc. #78, p. 10.) Defendants also argue that there is no evidence that Plaintiff suffered a "deprivation of liberty" following the initial court appearance because she was released from custody that day. (Id., p. 11.) Alternatively, Defendants argue they are entitled to qualified immunity. (Id., pp. 11-14.)

**(1) General Legal Principles**

Plaintiff's claim for malicious prosecution under the Fourth Amendment is "shorthand for a claim of deprivation of liberty pursuant to legal process." Luke v. Gulley, 975 F.3d 1140, 1143 (11th Cir. 2020). "[T]he gravamen of the Fourth Amendment claim

for malicious prosecution, as this Court has recognized it, is the wrongful initiation of charges without probable cause." <u>Thompson v. Clark</u>, 212 L. Ed. 2d 382 (2022).   To succeed on this claim, Plaintiff must prove that she suffered a seizure pursuant to legal process that violated the Fourth Amendment and that she satisfied the elements of the common law tort of malicious prosecution. <u>Luke</u>, 975 F.3d at 1143.

> The common-law elements of malicious prosecution require Luke to establish that the officials instituted criminal process against him with malice and without probable cause and that the broader prosecution against him terminated in his favor. If a plaintiff establishes that a defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process, he has also established that the defendant instituted criminal process against him with malice and without probable cause. This proof will also satisfy the plaintiff's burden to establish causation.

> We can simplify our standard for malicious prosecution into two elements: the plaintiff must prove (1) that the defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process and (2) that the criminal proceedings against him terminated in his favor. To establish that Gulley violated his Fourth Amendment right to be free from seizures pursuant to legal process, Luke must establish that the legal process justifying his seizure was constitutionally infirm and that his seizure would not otherwise be justified without legal process.

<u>Luke</u>, 975 F.3d at 1143-44 (internal punctuation and citations omitted.)   The first element requires proof that the legal process

justifying seizure was constitutionally infirm and that seizure would not otherwise be justified without legal process. <u>Luke v. Gulley</u>, 50 F.4th 90, 95 (11th Cir. 2022)(citation omitted).  The lack of legal process defeats a claim of malicious process. <u>Black v. Wigington</u>, 811 F.3d 1259, 1267 (11th Cir. 2016); <u>Williams v. Aguirre</u>, 965 F.3d 1147, 1158 (11th Cir. 2020).  Also, "the presence of probable cause defeats a claim of malicious prosecution." <u>Black</u>, 811 F.3d at 1266.  <u>See also</u> <u>Grider v. City of Auburn, Ala.</u>, 618 F.3d 1240, 1256 (11th Cir. 2010).

### (2)   Application of Legal Principles

Defendants correctly assert that the existence of probable cause defeats a § 1983 malicious prosecution claim.  The Court has previously found that the summary judgment facts establish that Deputy Clark had probable cause to arrest Plaintiff for violation of Fla. Stat. § 843.02.  This finding also applies to Deputy Brown.[9] Plaintiff's malicious prosecution claim against Deputy Clark and Deputy Brown fails as a matter of law. <u>See</u> <u>Nieves</u>, 139 S. Ct. at 1724 (A "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."); <u>Kjellsen v. Mills</u>, 517 F.3d 1232, 1237 (11th Cir. 2008)("Because lack of

---

[9] "[B]oth the United States Supreme Court and the Florida Supreme Court have allowed the collective knowledge of the investigating officers to be imputed to each participating officer." <u>Terrell v. Smith</u>, 668 F.3d 1244, 1252 (11th Cir. 2012).

probable cause is a required element to prove a § 1983 claim for malicious prosecution in violation of the Constitution, the existence of probable cause defeats the claim.").

### (3)  Malicious Prosecution Claim On The Merits

As to the elements of malicious prosecution, "[i]n the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted." Kingsland, 382 F.3d at 1235.  The undisputed evidence demonstrates that there was no "post-arraignment deprivation of liberty" since Plaintiff was released on bond following her initial appearance. (Doc. #78-6, p. 71.) Accordingly, Plaintiff's malicious prosecution claim cannot succeed on the merits. See Nieves, 241 F.3d at 55. See also Love, 450 F. Supp. 2d at 1336 (dismissing plaintiff's § 1983 malicious prosecution claim for lack of deprivation of liberty, where plaintiff was released on bond after initial appearance, since she was no longer seized for Fourth Amendment purposes).

### (4)  Qualified Immunity

Defendants also assert they are entitled to qualified immunity because there was at least arguable probable cause to arrest and detain Plaintiff and, even without arguable probable cause, there is no showing that Deputy Clark or Deputy Brown violated a clearly established law in the context of the factual situation that confronted the deputies.  (Doc. #78, pp. 12-14.)

In § 1983 malicious prosecution claim "[a]rguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." Grider, 618 F.3d at 1256-57. As the Court has found, Deputy Clark had actual and arguable probable cause to arrest Plaintiff. Therefore, deputies Clark and Brown are entitled to qualified immunity on the federal malicious prosecution claim.

Plaintiff has not shown that Defendants violated a clearly established law in the context of this situation so as to give fair notice that the actions of the Defendants were unconstitutional. Hope v. Pelzer, 536 U.S. 730, 740-41 (2002). Plaintiff does not point to any evidence of a materially similar case, to novel facts that should be controlled by a broader, clearly established principle, or that the Defendants' conduct presented a flagrant violation of the Constitution. See Davis, 44 F.4th at 1312-13. Accordingly, the summary judgment facts show that Plaintiff has not proven the constitutional right was clearly established at the time of the incident.

Everything considered, Deputies Brown and Clark are entitled to summary judgment as to Count VII of the SAC because the summary judgment facts establish there was probable cause to prosecute Plaintiff for violation of Fla. Stat. § 843.02. Additionally, Plaintiff has failed to establish a post-arraignment deprivation

of liberty.  Alternatively, both deputies are entitled to qualified
immunity.

### D. Count VIII — First Amendment Retaliation Against Deputy Clark In His Individual Capacity Pursuant to 42 U.S.C. § 1983

Count VIII of the SAC alleges pursuant to § 1983 that Deputy
Clark retaliated against Plaintiff for exercising her First
Amendment right to criticize the conduct of the officers. (Doc.
#61, ¶ 86.)  Specifically, Plaintiff alleges she expressed her
"opinion regarding the conduct of the LCSO's officers," which
caused Deputy Clark to retaliate against her by "physically
attacking, unlawfully detaining, falsely arresting and utilizing
excessive force against her." (Id., ¶¶ 87, 89.)  Plaintiff contends
she engaged in protected speech when she informed LSCO deputies
there would be a lawsuit due to their actions at the Lani Kai, and
that she was only arrested because she had voiced her displeasure
with the deputies' behavior. (Doc. #78-2; Doc. #82, p. 16.)

Deputy Clark argues that he is entitled to summary judgment
because Plaintiff was not engaged in constitutionally protected
speech and his actions were supported by probable cause to arrest
and detain Plaintiff. (Doc. #78, pp. 21-23.)  Deputy Clark also
asserts he is entitled to qualified immunity.  (Id., p. 23.)

#### (1)  General Legal Principles

"As a general matter the First Amendment prohibits government
officials from subjecting an individual to retaliatory actions for

engaging in protected speech." <u>Nieves</u>, 139 S. Ct. at 1722 (quoting <u>Hartman v. Moore</u>, 547 U.S. 250, 256 (2006)). A First Amendment retaliation claim requires that Plaintiff establish that (1) she engaged in constitutionally protected speech; (2) the defendant's retaliatory conduct adversely affected that protected speech; and (3) there was a causal connection between the retaliatory actions and the adverse effect on speech. <u>Demartini</u>, 942 F.3d at 1289. When a plaintiff alleges that retaliatory conduct is an arrest or seizure, plaintiff must plead and prove the absence of probable cause in order to establish the causation link. See <u>Nieves</u>, 139 S. Ct. at 1726 ("[W]ith § 1983 First Amendment retaliation claims arising in the criminal prosecution and arrest context, the presence of probable cause will *generally* defeat a § 1983 First Amendment retaliation claim based on a civil lawsuit as a matter of law."); <u>Reichle v. Howards</u>, 566 U.S. 658, 664-65 (2012)("This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause . . . ."). <u>See also Dahl v. Holley</u>, 312 F.3d 1228, 1236 (11th Cir. 2002). As the Eleventh Circuit summarized:

> To recap, the presence of probable cause will (1) defeat a § 1983 First Amendment retaliation claim for an underlying retaliatory criminal prosecution, <u>Hartman</u>, and also (2) will generally defeat a § 1983 First Amendment retaliation claim for an underlying retaliatory arrest, <u>Nieves</u>, except (a) when the "unique" five factual circumstances in <u>Lozman</u> exist together, or (b)

> where the plaintiff establishes retaliation
> animus and presents "objective evidence" that
> he was arrested for certain conduct when
> otherwise similarly situated individuals
> (committing the same conduct) had not engaged
> in the same sort of protected speech and had
> not been arrested, <u>Nieves</u>.

<u>DeMartini</u>, 942 F.3d 1277 at 1297.

### (2) Application of Principles

### (a)  Protected Speech

"In determining whether the government has violated free speech rights, the initial inquiry is whether the speech or conduct affected by the government action comes within the ambit of the First Amendment." <u>One World One Fam. Now v. City of Miami Beach</u>, 175 F.3d 1282, 1285 (11th Cir. 1999). It is clear that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." <u>City of Houston, Tex. v. Hill</u>, 482 U.S. 451, 461 (1987). While this is not without limits, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." <u>Hill</u>, 482 U.S. at 462–63.

Deputy Clark does not argue that Plaintiff's words exceeded the bounds of First Amendment protection. Deputy Clark does argue, however, that Plaintiff's speech was not protected by the First Amendment because it occurred on private property, i.e., on the property of the Lani Kai. (Doc. #78, pp. 21–22.)

Deputy Clark cites only non-binding cases for the proposition that there is no First Amendment free speech right on private property.  But the relationship between First Amendment rights and private property is more complicated than Deputy Clark suggests, and it does not suffice to simply assert there are no First Amendment rights on private property.  See Lloyd Corp., Ltd. v. Tanner, 407 U.S. 551 (1972); PruneYard Shopping Ctr. v. Robins, 447 U.S. 74 (1980); Keister v. Bell, 29 F.4th 1239 (11th Cir. 2022); McClendon v. Long, 22 F.4th 1330 (11th Cir. 2022).  Here, Plaintiff spoke words which are well within the protection of the First Amendment.  She did so at a general location – the Lani Kai – where she was entitled to be.   There is no suggestion that the owners of the private property had asked her to leave the premises.  She was in a portion of the private property open to the public, including the LCSO deputies.  Deputy Clark has not convinced the Court that Plaintiff lost her First Amendment right under these circumstances.  The summary judgment facts do not establish that Plaintiff's speech was not protected by the First Amendment simply because it occurred in the breezeway of a resort hotel.

### (b)   Probable Cause

Deputy Clark also argues that the third element of the First Amendment retaliation claim is absent because he had probable cause to arrest, which defeats the First Amendment claim.  See Nieves, 139 S. Ct. at 1726.  As discussed above, the summary judgment facts

show there was actual probable cause for Plaintiff's arrest and detention for violation of Fla. Stat. § 843.02. The existence of probable cause to arrest, detain, and prosecute defeats Plaintiff's First Amendment retaliation claim. See <u>Nieves</u>, 139 S. Ct. at 1726. Plaintiff neither alleges nor establishes any exception to the general rule that the existence of probable cause defeats a First Amendment retaliation claim. Deputy Clark is therefore entitled to summary judgment as to Count VIII of the SAC because, while Plaintiff engaged in protected speech, he had probable cause to arrest and prosecute her.

### (c)  Qualified Immunity

Deputy Clark argues in the alternative that he is entitled to qualified immunity as to the First Amendment retaliation claim. Deputy Clark asserts that there was not fair notice that Plaintiff was engaged in protected speech since the right was not clearly established. (Doc. #78, p. 23.)

An officer who has arguable probable cause to arrest is entitled to qualified immunity from a First Amendment retaliation claim. <u>Redd v. City of Enter.</u>, 140 F.3d 1378, 1383 (11th Cir. 1998). As the Court has found, Deputy Clark had actual and arguable probable cause to arrest Plaintiff. Therefore, he is entitled to qualified immunity on the First Amendment claim.

In sum, Plaintiff's speech was protected by the First Amendment, but Deputy Clark had probable cause to arrest her and

that probable cause defeats the First Amendment retaliation claim. Alternatively, Deputy Clark is entitled to qualified immunity as to this claim. Defendants' motion is therefore granted as to Count VIII.

### E. Count XI — Fourth Amendment Negligent Training and Supervision Against Sheriff Marceno In His Official Capacity Pursuant to 42 U.S.C. § 1983

Count XI of the SAC sets forth a claim pursuant to Section 1983 against Sheriff Marceno in his official capacity[10] for negligent supervision and training. (Doc. #61, p. 25.) Plaintiff alleges that Sheriff Marceno "promulgated and maintained a de-facto unconstitutional custom, policy, or practice or permitting, ignoring, and condoning and/or encouraging . . . deputies . . . to unlawfully arrest citizens where no probable cause or reasonable suspicion exists that a citizen has committed a crime." (Doc. #61, ¶ 110.)  Plaintiff further alleges that Sheriff Marceno "knew or should have known of a history, custom, propensity, or pattern in which deputies . . . openly charged citizens with crimes where no probable cause or reasonable suspicion exists."  (Id., ¶ 111.) Additionally, Plaintiff asserts that Sheriff Marceno had a duty to protect her from unreasonable searches and seizures, false arrests, excessive force and wrongful imprisonment, and that he

---

[10]  An official capacity suit against the Sheriff is, in essence, a suit against the County. Baxter, 54 F.4th at 1252 n.7; Ireland v. Prummell, 53 F.4th 1274 (11th Cir. 2022).

failed that duty by not properly training, instructing, or managing the LCSO deputies. (Id., ¶¶ 113-14.)  Plaintiff concludes that because of Sheriff Marceno's failure to adequately train or supervise LCSO deputies, she was a victim of tortious conduct. (Id., ¶ 116.)

The Sheriff argues that this claim "fails for lack of evidence."  (Doc. #78, pp. 27-30.)

### (1)   General Legal Principles

The legal principles in a failure to train case were recently summarized by the Eleventh Circuit:

> Under Monell [v. Department of Social
> Services, 436 U.S. 658 (1978)], "a
> municipality can be found liable under § 1983
> only where the municipality itself causes the
> constitutional violation at issue." City of
> Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct.
> 1197, 103 L.Ed.2d 412 (1989) (emphasis *1270
> in original).  "Respondeat superior or
> vicarious liability will not attach under §
> 1983." Id. Thus, "only when a 'policy or
> custom' of the municipality inflicts the
> injury does § 1983 liability exist." Cook ex
> rel. Estate of Tessier v. Sheriff of Monroe
> Cnty., 402 F.3d 1092, 1116 (11th Cir. 2005).
> A plaintiff can establish the existence of a
> municipal policy or custom in several ways,
> including by: (1) pointing to an official
> policy; (2) identifying "a widespread practice
> that, although not authorized by written or
> express municipal policy, is so permanent and
> well settled as to constitute a custom or
> usage with the force of law"; or (3)
> demonstrating that the municipality "tacitly
> authorize[d]" or "displaye[d] deliberate
> indifference towards" the "constitutionally
> offensive actions of its employees." Griffin
> v. City of Opa-Locka, 261 F.3d 1295, 1308

> (11th Cir. 2001) (quotation omitted).
> Ultimately, the plaintiff must show that the
> municipality's "policies [were] the moving
> force behind the constitutional violation."
> Harris, 489 U.S. at 379, 109 S.Ct. 1197
> (quotation omitted and alteration adopted).

Baxter, 54 F.4th at 1269-70.   See also Underwood v. City of Bessemer, 11 F.4th 1317, 1333 (11th Cir. 2021).

### (2)   Application of Principles

The summary judgment facts establish that Plaintiff has failed to establish the existence of the required policy or custom. There is no evidence of an official policy which directs the violation of the First or Fourth Amendments.  Plaintiff has also failed to provide any evidence from which a reasonable jury could conclude that Sheriff Marceno knew of a need to train and deliberately chose not to take action, or that he knew of similar, prior incidents that would have prompted a duty to supervise LCSO deputies.[11] See (Doc. #83-1, pp. 18-20.) "Because there was 'no evidence of a history of widespread prior abuse . . . [that] put the [S]heriff on notice of the need for improved training or

---

[11] Plaintiff relies on Deputy Van Pelt's deposition testimony that he learned de-escalation techniques while working as a corrections officer, and Deputy Brown's deposition testimony that in general people have lodged complaints against him, but nothing went through "IA," to assert that Sheriff Marceno knew or should have known of need to train or supervise LCSO deputies.  (Doc. #83-1, pp. 19-20.)  This evidence does not demonstrate a history of widespread abuse or a pattern of prior incidents from which a reasonable jury could conclude that Sheriff Marceno knew or should have known of a need for training or supervision.

supervision,' there is no jury question on the matter of deliberate indifference." Cooper v. Rutherford, 828 F. App'x 619, 622 (11th Cir. 2020)(quoting Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990)).

The summary judgment facts establish no basis to impose liability on the Sheriff in his official capacity. Summary judgment in Sheriff Marceno's favor is granted as to Count XI.

**VI.**

Deputies Clark and Brown assert they are entitled to summary judgment as to each of the state law claims, both on the merits and pursuant to the Florida official immunity statute. The Court first discusses the Florida official immunity statute, then addresses the individual state law claims.

**A. Florida's Official Immunity Statute**

Florida's official immunity statute provides in pertinent part:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
>
> . . .
>
> The state or its subdivisions are not liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside

> the course and scope of her or his employment or
> committed in bad faith or with malicious purpose
> or in a manner exhibiting wanton and willful
> disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). This official immunity statute is a species of sovereign immunity that shields officers from tort liability unless one of the three exceptions is established. <u>Perex v. Mulvey</u>, 915 F.3d 1276, 1291 (11th Cir. 2019).

Under this statute, a deputy sheriff is personally liable only if he: (1) acted outside the scope of his employment or function; or (2) was within the scope of his employment or function and acted (a) "in bad faith," or (b) "with malicious purpose," or (c) "in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). While these terms are not defined in the statute, "bad faith" has been equated with the actual malice standard; "malicious purpose" has been interpreted to mean the conduct was committed with ill will, hatred, spite, or an evil intent, or the subjective intent to do wrong; and "wanton and willful disregard of human rights or safety," has been held to mean conduct that is worse than gross negligence, and requires proof that an officer knew, or reasonably should have known, that the conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences. <u>Butler v. Gualtieri</u>, 41 F.4th 1329, 1337 (11th Cir. 2022).

**B. Count I and Count III — False Arrest and False Imprisonment Under Florida Law Against Deputy Clark In His Individual Capacity and Sheriff Marceno In His Official Capacity**

Count I of the SAC alleges a claim for "false arrest" in violation of Florida law against Deputy Clark in his individual capacity and Sheriff Marceno in his official capacity. Count I asserts that Deputy Clark was acting within the scope of his employment with the LCSO and under color of state law. (Doc. #61, ¶¶ 23, 24.) Deputy Clark is alleged to have intentionally caused Plaintiff to be "unlawfully restrained without legal authority and against her will by grabbing her arm, throwing her to the ground, handcuffing her, violently lifting her up by wrenching her shoulders, and confining her to a jail cell." (Id., ¶ 24.) This action was neither consented to nor otherwise privileged. (Id., ¶ 26.) Deputy Clark's conduct subjected Plaintiff to "false arrest, false imprisonment and deprivation of liberty without a valid warrant or probable cause" (Id., ¶ 25), causing various damages to Plaintiff. (Id., ¶ 29.) Count I further alleges that Deputy Clark acted "in bad faith, with malicious purpose and in a manner exhibiting wanton and willful disregard for Plaintiff's rights," and therefore Sheriff Marceno, as his employer, is responsible under the doctrines of *respondeat superior* and vicarious liability. (Id., ¶¶ 27, 28.)

Count III of the SAC alleges a claim for "false imprisonment" in violation of Florida law against Deputy Clark in his individual

capacity and Sheriff Marceno in his official capacity.  This claim
is based on the same allegations as set forth in Count I.  (Id.,
¶¶ 39-48.)

### (1)  General Legal Principles

"False arrest and false imprisonment are closely related, but
false imprisonment is a broader common law tort; false arrest is
only one of several methods of committing false imprisonment."
Mathis v. Coats, 24 So. 3d 1284, 1289 (Fla. 2d DCA 2010). See also
City of Boca Raton v. Basso, 242 So. 3d 1141, 1143 (Fla. 4th DCA
2018).  "The essential elements of a cause of action for false
imprisonment include: (1) the unlawful detention and deprivation
of liberty of a person; (2) against that person's will; (3) without
legal authority or "color of authority"; and (4) which is
unreasonable and unwarranted under the circumstances." Mathis, 24
So. 3d at 1289.  Similarly, the tort of false arrest requires proof
of "1) the unlawful detention and deprivation of liberty of a
person 2) against that person's will 3) without legal authority or
'color of authority' and 4) which is unreasonable and unwarranted
under the circumstances."  Florez v. Broward Sheriff's Off., 270
So. 3d 417, 421 (Fla. 4th DCA 2019).  Thus, the Eleventh Circuit
has stated that false arrest and false imprisonment in Florida are
"different labels for the same cause of action." Coleman v.
Hillsborough Cnty., 41 F. 4th 1319, 1326 (11th Cir. 2022) (quoting
Rankin v. Evans, 133 F.3d 1425, 1431 n.5 (11th Cir. 1998)).  Under

Florida law, the existence of probable cause to arrest is an affirmative defense which is a complete bar to claims of false arrest and false imprisonment. Lewis v. Morgan, 79 So. 3d 926, 928 (Fla. 1st DCA 2012)(false arrest); Baxter, 54 F. 4th at 1271 (false imprisonment); Mas v. Metro. Dade Cnty., 775 So.2d 1010, 1011 (Fla. 3rd DCA 2001)(both false arrest and false imprisonment).

Defendants do not dispute Plaintiff was "seized," i.e., arrested and placed in jail, thus satisfying the "imprisonment" element of the causes of action. Baxter, 54 F. 4th at 1271. Defendants argue, however, that the claims fail because Deputy Clark had probable cause to seize, arrest, and file the charge against Plaintiff. (Doc. #78, pp. 8-10.)  Plaintiff responds that Deputy Clark had no such probable cause.  (Doc. #83-1, pp. 7-13.)

### (2)   Application of Principles

As discussed above, the summary judgment facts demonstrate that Deputy Clark had probable cause to arrest, detain and jail Plaintiff for violation of Fla. Stat. § 843.02.  Deputy Clark has therefore established the affirmative defense that probable cause existed for the arrest and imprisonment.  Since Deputy Clark had probable cause, his conduct did not amount to a false arrest or a false imprisonment, and there is nothing for which his employer, Sheriff Marceno, is liable.  Both Defendants are entitled to summary judgment on Count I and Count III of the SAC.

### (3)   Immunity Under Fla. Stat. § 768.28

Deputy Clark argues in the alternative that he has immunity under a Florida statute from all of the state law claims, including these two.  (Doc. #78, pp. 25-27.)  The parties agree that Deputy Clark was acting in the course and scope of his employment. (Doc. #61, ¶ 9; Doc. #78, p. 26.) Therefore, the only remaining issue is whether Deputy Clark acted in bad-faith, or in a wanton and willful manner, or in a manner exhibiting wanton and willful disregard of human rights.  Plaintiff argues that a reasonable jury could conclude that Deputy Clark acted with ill will or evil intent because the facts conclusively demonstrate that Plaintiff committed no crime at any point prior to or after Deputy Clark applied excessive force and placed her under arrest with knowing disregard of the "consequences" Plaintiff would face. (Doc. #61, ¶¶ 27, 46; Doc. #83-1, p. 14.)

As the Court has found, this argument is not supported by the summary judgment facts.  The summary judgment facts do not reveal any issue of material fact from which a reasonable jury could infer Deputy Clark acted in bad faith, or with malicious purpose, or with wanton and willful disregard for human rights.  Accordingly, Deputy Clark is shielded from personal liability, and is entitled to summary judgment on Counts I and III of the SAC.

With respect to Sheriff Marceno, he has no tort liability under state law because Deputy Clark did nothing to impose

liability.  See Laster v. City of Tampa Police Dep't, 575 F. App'x 869, 873 (11th Cir. 2014) ("To prevail on a theory of vicarious liability against the City under Fla. Stat. § 768.28, [the plaintiff] had to show liability on the part of . . . the City's employee.").

Additionally, the pertinent portion of the statute provides the Sheriff is not liable "in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a).  The SAC pled facts which would bring the Sheriff squarely within the scope of statutory immunity.

In conclusion, there was no false arrest or false imprisonment because the summary judgment facts establish that Deputy Clark had probable cause to arrest and detain Plaintiff.  Additionally, the Florida official immunity statute grants immunity to Deputy Clark since there has been no showing of bad faith, malice, or wanton disregard for human rights.  As a result, Sheriff Marceno cannot be held vicariously liable.  Therefore, the Court grants Defendants' motion as it relates to Count I and Count III of the SAC concerning both Deputy Clark and Sheriff Marceno.

### C. Count VI – Malicious Prosecution Under Florida Law Against Deputies Clark and Brown In Their Individual Capacities

Count VI of the SAC alleges a claim for malicious prosecution in violation of Florida law against Deputy Clark and Deputy Brown in their individual capacities.   More specifically, Plaintiff alleges that Deputy Clark "intentionally, knowingly, maliciously, recklessly, unreasonably, and/or with gross negligence arrested Ms. Andrade and initiated criminal proceedings against her when they incarcerated her and charged her with a criminal offense." (Doc. #61, ¶ 65.)  Plaintiff alleges that the arrest and initiation of criminal charges were "without sufficient probable cause, legal justification, just cause, or any other legally valid reason." (Id., ¶ 66.)  The criminal charges against Plaintiff terminated in her favor when the State Attorney's Office declined to file an information.  (Id., ¶ 67.)  Plaintiff asserts there was a lack of probable cause because she had committed no crime or violation of law (Id., ¶ 68) and both deputies "lacked probable cause to believe Plaintiff was guilty or that the prosecution would succeed."  (Id., ¶ 69.)  Further, Plaintiff alleges that both deputies acted with malice, which can be inferred from the absence of probable cause. (Id., ¶¶ 70-71.)

Defendants assert that they are entitled to judgment as a matter of law because the summary judgment facts establish the existence of probable cause to arrest and prosecute Plaintiff.

(Doc. #78, pp. 8-10.)   Additionally, defendants argue that the Florida official immunity statute precludes individual liability. (Id., pp. 25-27.)

(1)   **General Legal Principles**

In Florida, a state law claim for malicious prosecution requires proof of six elements:

> In order to prevail in a malicious prosecution action, a plaintiff must establish that: (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding. The failure of a plaintiff to establish any one of these six elements is fatal to a claim of malicious prosecution.

Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1355 (Fla. 1994)(citations omitted.)  See also Debrincat v. Fischer, 217 So. 3d 68, 70 (Fla. 2017).  Proof of actual malice is not necessary, since proof of legal malice (i.e., an intentional act performed without justification or excuse) is sufficient.  Olson v. Johnson, 961 So. 2d 356, 359 (Fla. 2d DCA 2007).  Proof of the lack of probable cause, however, is necessary.  "The absence of probable cause is a necessary element of common law malicious prosecution."

Paez, 915 F.3d at 1292 (citing Miami-Dade Cnty. v. Asad, 78 So.3d 660, 664 (Fla. 3d DCA 2012)).  See also Alvarez-Mena v. Miami-Dade Cnty., 305 So. 3d 63, 68 (Fla. 3d DCA 2019).

        **(2)   Application of Principles**

    As the Court has found, the summary judgment facts establish there was probable cause to arrest, detain and prosecute Plaintiff for violation of Fla. Stat. § 843.02.  The existence of this probable cause defeats the Florida malicious prosecution claim. In addition, the summary judgment facts establish that Deputies Clark and Brown did not act outside the scope or function of their employment, and did not act in bad faith, or with malicious purpose, or in a manner exhibiting wanton or willful disregard for human rights, safety, or property.  Accordingly, they are entitled to immunity pursuant to Fla. Stat. § 768.28.  Defendants' motion for summary judgment on Count VI is granted.

    **D. Count IX – Battery Under Florida Law Against Deputy Clark
       In His Individual Capacity**

    Count IX of the SAC alleges a battery claim against Deputy Clark in his individual capacity. (Doc. #61, ¶¶ 92-103.)  Plaintiff alleges that Deputy Clark, while acting within the course and scope of his duties as a LCSO deputy (Id., ¶ 93), subjected her "to immediate harmful and/or offensive physical contact and battered her without her consent or legal justification" (Id., ¶ 94) when he "grabbed [Plaintiff] by the arm, flung her around and slammed

her body and head onto the concrete garage floor . . . [and] cuffed her and dragged her to her feet, violently wrenching her shoulders in the process." (Id., ¶ 95.)   This is alleged to have caused significant damage to Plaintiff.  (Id., ¶¶ 96, 98, 102.)[12]

Deputy Clark asserts that summary judgment in his favor is warranted because the undisputed facts show the force used was justified, and therefore not a battery.  (Doc. #78, pp. 14-18.) The Court agrees.

### (1)   General Legal Principles

Florida law concerning battery by a law enforcement officer in the context of an arrest was recently summarized by the Eleventh Circuit:

> In Florida, battery has two elements: (1) "inten[t] to cause a harmful or offensive contact," and (2) a resulting "offensive contact with the person of the other." City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d DCA 1996). In the arrest context, "[a] battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." Id. "If excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery." Id. But, "ordinary incidents of [an] arrest ... do not give rise to an independent tort." Lester

---

[12] Count IX also alleges that Sheriff Marceno is responsible for this conduct under doctrines of *respondeat superior* and vicarious liability. (Doc. #61, ¶ 101.)  The Sheriff, however, is not named as a defendant in Count IX, and there is no requested relief as to the Sheriff in the "Wherefore" clause of Count IX.

v. City of Tavares, 603 So. 2d 18, 19–20 (Fla.
5th DCA 1992).

Baxter, 54 F.4th at 1272–73 ("Deputy Lee used brief and restrained force—grabbing Baxter, forcing him to the ground, and pulling his arm up—necessary to subdue a resisting suspect. His use of force during the arrest was entirely ordinary and does not give rise to a battery claim under Florida law."). See also Johnson v. City of Miami Beach, 18 F.4th 1267, 1275 (11th Cir. 2021).

### (2)    Application of Principles

As the Court has previously found, the summary judgment facts establish that Deputy Clark had probable cause to arrest Plaintiff and did not use excessive force during the arrest.  These facts further establish that there was no battery committed by the deputy.  Accordingly, Deputy Clark is entitled to summary judgment as to Count IX.

### E. Count X – Intentional Infliction of Emotional Distress Under Florida Law Against Deputies Clark and Brown In Their Individual Capacities

Count X of the SAC alleges a claim for intentional infliction of emotional distress (IIED) under Florida law against Deputies Clark and Brown in their individual capacities. (Doc. #61, pp. 17–18.) Plaintiff alleges that the deputies' actions during her arrest and detention incident was "outrageous in character, extreme in degree, went beyond all possible bounds of decency, and is to be regarded as atrocious and utterly intolerable in a civilized

community such that no reasonable person, including Plaintiff, should be expected to tolerate it." (Id., ¶ 105.)  Count X further alleges that the conduct was intended to cause, and did cause, extreme emotional distress, humiliation, and fear.  (Id., ¶¶ 106, 107.)

Defendants assert that Plaintiff's IIED claim fails as a matter of law because their actions fall well below the threshold standard of outrageous conduct. (Doc. #78, pp. 23-25.) The Court agrees.

### (1)    General Legal Principles

The Florida Supreme Court first recognized the tort of intentional infliction of emotional distress (IIED) in 1985. Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277 (Fla. 1985); Lopez v. Target Corp., 676 F.3d 1230, 1235 (11th Cir. 2012). "[T]he elements of intentional infliction are (1) intentional or reckless conduct (2) that is "outrageous" in that it is "beyond all bounds of decency" and "utterly intolerable in a civilized community" (3) and that causes the victim emotional distress (4) that is "severe." Kim v. Jung Hyun Chang, 249 So. 3d 1300, 1305 (Fla. 2d DCA 2018)(citations omitted.)

"To successfully pursue a cause of action for intentional infliction of emotional distress, the plaintiff must show conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community." Byrd v. BT Foods, Inc., 948 So. 2d 921, 928 (Fla. 4th DCA 2007). "It is not enough that the intent is tortious or criminal; it is not enough that the defendant intended to inflict emotional distress; and it is not enough if the conduct was characterized by malice or aggravation which would entitle the plaintiff to punitive damages for another tort." State Farm Mut. Auto. Ins. Co. v. Novotny, 657 So. 2d 1210, 1213 (Fla. 5th DCA 1995). "Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact." Escadote I Corp. v. Ocean Three Condo. Ass'n, Inc., 307 So. 3d 938 (Fla. 3d DCA 2020). This must be evaluated on an objective basis, and plaintiff's subjective response to the conduct does not control. See Vance v. S. Bell Tel. & Tel. Co., 983 F.2d 1573, 1575 n.7 (11th Cir. 1993) (citing Baker v. Fla. Nat'l Bank, 559 So. 2d 284, 287 (Fla. 4th DCA 1990)). "The standard is extremely high" under Florida law. Hendricks v. Rambosk, No. 2:10-cv-526-FtM-29DNF, 2011 WL 1429646, 2011 U.S. Dist. LEXIS 40608, at *11 (M.D. Fla. Apr. 14, 2011).

### (2)   Application of Principles

As discussed earlier, the summary judgment facts establish that Plaintiff was lawfully arrested with probable cause and without excessive force. The Court finds that the summary judgment facts also show that Deputies Clark and Brown did not engage in

"extreme and outrageous conduct" sufficient to support an IIED claim under Florida law. See, e.g., Pena v. Marcus, 715 F. App'x 981, 982, 989 (11th Cir. 2017) (conduct of deputies was not outrageous for purposes of an intentional infliction of emotional distress claim when they broke into plaintiff's home to search it, fractured plaintiff's foot, hit plaintiff in the shoulder with a rifle, and caused physical damage to her home); Rubio v. Lopez, 445 F. App'x 170, 172, 175 (11th Cir. 2011) (no outrageous conduct where officers forced plaintiff onto hot asphalt and hogtied him, which led to second degree burns on his face and chest); Valdes v. GAB Robins N. Am., Inc., 924 So. 2d 862, 866 (Fla. 3d DCA 2006)(Investigating and then falsely reporting that person has committed a crime, and causing his arrest, "is not the type of conduct that is so outrageous in character and extreme in degree as to go beyond the bounds of decency and be deemed utterly intolerable in a civilized society."). Because Plaintiff has failed to meet the extremely high standard required to prove an IIED claim against Deputy Clark or Deputy Brown, Defendants' motion for summary judgment as to Count X is granted.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. #78) is **GRANTED**.

2. The parties' Motions in Limine (Docs. ##94, 95, 96, 100, 101, 106, 114) are **DENIED as moot.**

3. The Clerk of the Court shall enter judgment in favor of defendants Carmine Marceno, Joseph M. Clark, and Earthen Brown as to all counts of the Second Amended Complaint, and terminate any pending deadlines and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __11th__ day of January, 2023.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record